JULIA E. STROMSBORG v. ERLING J. STROMSBORG.[1]

May 21, 1954.

Nos. 36,280, 36,281.

[1]Reported in 64 N. W. (2d) 499.

*Dorsey, Colman, Barker, Scott & Barber,* for appellant.
*W. Y. Henning* and *C. E. Phillips,* for respondent.

CHRISTIANSON, JUSTICE.

Defendant appeals from an order denying his motion to vacate a judgment entered against him in a divorce action and for a trial of the action on the merits. Appeal is also taken from the judgment itself.

Plaintiff commenced an action for absolute divorce against her husband, the defendant, by the service upon him of a summons and complaint on January 3, 1953. The summons and complaint were dated December 23, 1952. Plaintiff and defendant had been married 33 years, their only children being two adult sons. Defendant in his answer denied the allegations of cruel and inhuman treatment relied upon by plaintiff for the divorce and in addition entered a cross-bill asking for an absolute divorce from the plaintiff.

On January 26, 1953, the district court of the seventh judicial district, on the basis of plaintiff's complaint and affidavit, issued an order for defendant to show cause why, among other things, he should not pay to plaintiff adequate support money. The order to show cause also restrained defendant from disposing of or secreting any of his property. Pursuant to the order to show cause a hearing was held on January 31, 1953, at which defendant was present in person and was represented by his attorney. As a result thereof the district court on February 4, 1953, pursuant to an agreement made before the court between the parties, issued an order directing defendant to pay plaintiff $300 in order to cover temporary attorney fees, suit money, and support for plaintiff during the month of February; and in the event that the action was not concluded and findings were not made by March 1, 1953, defendant was to pay plaintiff the further sum of $125 for her support. The order further restrained defendant from disposing of or secreting any of his

property and ordered that all personal property in the homestead of the parties remain there during the pendency of the action.

The case was placed on the trial calendar for trial to be held at Foley, Minnesota, during the February 1953 term of court in Benton county. Upon the call of the case for trial on February 24, defendant's attorney informed the court that defendant had notified him that he had gone on a trip for a few days; that defendant had told him that he would keep in touch with him; and that although he would be able to contact his client for the trial of the case in a few days, it was questionable whether defendant could have his witnesses present for a trial during the February term of court. Consequently, it was agreed between counsel to set the case for trial during the March 1953 term of court which was to be held at Milaca, Minnesota.

On February 27, 1953, defendant was found in contempt of court on the grounds that he had disposed of and secreted his property, had removed certain personal property from the homestead of the parties in violation of the court order of February 4, 1953, and had departed from the United States with said property. The contempt order was issued ex parte pursuant to plaintiff's affidavit and testimony to the effect that she had been informed that defendant had left the United States destined for Norway which she believed was for the purpose of avoiding trial and secreting his property.

On March 11, 1953, plaintiff petitioned the court to issue an order directing and restraining the Midland National Bank of Minneapolis from honoring any demand for collection of two cashier's checks it had issued to defendant on December 22, 1952, for the sums of $20,678.18 and $15,000 and further to direct and restrain the Lincoln office of the Northwestern National Bank from honoring any demand for collection of a $17,734.73 bank money order issued to defendant on January 28, 1953. The petition alleged that on December 22, 1952, defendant had withdrawn the above-mentioned sums of money from three different Minneapolis savings institutions and had subsequently received in exchange the cashier's checks and the bank money order which were taken by him to Norway, thus jeopardizing plain-

tiff's interest in said funds unless collection was restrained. Of the funds withdrawn by defendant, $5,000 was deposited in plaintiff's name as trustee. The district court on March 11, 1953, issued an order, in accordance with plaintiff's request, restraining both Midland National Bank of Minneapolis and the Northwestern National Bank, through its Lincoln office, from honoring said cashier's checks and bank money order.

At the opening of the March term of court on March 16, 1953, at Milaca, the trial was again postponed because of the absence of defendant. Defendant's attorney informed the court at that time that he had just learned for the first time of his client's trip to Norway, and as a result it was decided to try the case at a date to be subsequently agreed upon. Defendant's attorney had received on February 24, 1953, a letter from defendant, who was in New York, requesting him to make arrangements with defendant's son, Gunnar Stromsborg, then a resident of Phoenix, Arizona, to pay plaintiff $100 per month and credit the payments on an indebtedness to defendant which was evidenced by two promissory notes. However, there was no mention in the letter of the trial nor any indication that defendant was intending to travel to Norway.

Following the postponement, defendant's attorney talked two or three times with plaintiff's attorney concerning the pending action. Finally, in the latter part of May, it was arranged between counsel and the court to have the case tried in about one week on June 2, 1953, at St. Cloud. Defendant's attorney immediately obtained from plaintiff's attorney defendant's Norway address and cabled him as follows: "Trial June 2nd. You must appear or be defaulted." A reply cable signed by defendant was received by defendant's attorney on June 1, 1953, which stated: "Received wire today. Be back last of August." Aside from the letter of February 24, 1953, this was the only communication of any kind which defendant's attorney had with his client from the time he left Minnesota until the trial which was held on June 2, 1953. It is undisputed that at no time in this period did defendant ever inform his attorney where to contact him

in Norway nor did he ever inform him of the fact that he was going to Norway.

The trial on June 2 was conducted without the presence of the defendant, defendant being represented at the trial by his attorney. At the start of the trial, defendant's attorney made a statement to the court concerning his position in the case, pointing out among other things the extent of his communications with defendant and the contents of defendant's reply cable which he had received the previous day. It was further disclosed that defendant was in default on his support payments. The trial judge thereupon ordered the matter to be tried. The only evidence presented at the trial was testified to by plaintiff and Roland Stromsborg, a son of the plaintiff and defendant. Plaintiff thereafter was granted a divorce and in addition was awarded as permanent alimony one-half of the value of defendant's property at the time of the commencement of the action which amounted to $45,390.85.

Upon defendant's return to Minnesota in August, he substituted his present counsel for his former attorney. Thereafter on September 24, 1953, defendant moved to vacate the judgment and decree of divorce and to set the action down for trial on the merits. In support thereof he filed affidavits by himself, his doctor, and the general manager of the Minneapolis office of the Norwegian-American Lines. These affidavits advance the following facts: About four years ago defendant suffered a severe heart attack and as a result thereof was ordered by his doctor to sell his business and lead a less strenuous life. Defendant complied with this advice. Immediately following the commencement of the divorce action he began to suffer chest pains which were diagnosed by his doctor as recurrent attacks of coronary heart pains. As a result his doctor advised him that he must get away from the emotional strain he was then undergoing if he wanted to live and recommended to him that he take a trip and a long rest from his home in St. Cloud. He was extremely nervous and upset at the time in addition to being in pain, and in this condition and realizing that it was necessary in order to save his life, he decided to take a trip to get away from St. Cloud. About

the middle of February he advised his attorney of his intention to leave St. Cloud and requested him to arrange to continue the trial until September 1953. At approximately the same time he met plaintiff on the street in St. Cloud and advised her that he intended to take a trip. He was advised by his attorney that he would try to have the matter continued and he thus left St. Cloud assuming the trial would be postponed until September. During the month of February, defendant, while in Minneapolis, sought round-trip ship passage for himself and his automobile to and from Norway, leaving the United States about the end of February and returning before the 1st of September. He purchased round-trip accommodations for his automobile, but since there were no round-trip accommodations available for himself on the Norwegian-American Lines, he purchased a one-way passage on the advice of the ticket manager that in all probability return passage would be available by virtue of some reservation cancellation. Thereafter he traveled by automobile to New York from where he left by ship for his native country, Norway. The receipt of the cablegram from his attorney on May 30, advising him trial was to be held in three days, came as a great shock and surprise since he had not heard from him since the middle of February. He immediately made inquiry which disclosed that the first available ship passage back to the United States, his heart condition not allowing air travel, would land him in New York in the latter part of August. He immediately sent a cablegram to his attorney advising him that he would be back in the United States in the latter part of August. Defendant then booked passage at the earliest possible moment, arriving in the United States the first part of August due to a reservation cancellation. In his affidavit defendant also denied plaintiff's allegations of cruel and inhuman treatment, giving grounds for divorce, which were testified to at the trial and in addition contested the valuation placed on the homestead owned by the parties as joint tenants for purposes of the permanent alimony judgment.

In response to defendant's motion, plaintiff produced affidavits by herself, her attorney, and Roland Stromsborg. In her affidavit

plaintiff stated that defendant's condition during the last few years did not prevent him from leading an ordinary, normal life for he continued to go to public dances and drink intoxicating liquor and has never complained that he was unable to lead a normal life because of the heart condition. She further stated that in early February she met defendant on the street in St. Cloud and that he advised her that he was going to Quincy, Massachusetts, in order to obtain witnesses upon his behalf; that defendant at no time stated he was taking any trip for his health; that defendant looked to be in the same physical condition as he had been for a number of years; that he at no time made any complaint to her that his heart condition had been worse or that he was in need of a rest; that he did not go to Norway to rest but rather traveled through 11 different countries; and that since returning to the United States he has attended public dances and otherwise not conducted himself like a sick man. Plaintiff's affidavit further discloses that before leaving defendant entered their home and took therefrom various items of property mainly household goods, some of which he took with him to Norway; that shortly thereafter he traded in his two automobiles for one new Packard which he took with him to Norway; and that prior thereto he had withdrawn all his cash and left under circumstances indicating that he never intended to return to the United States. Further, her affidavit states that defendant left her with practically no money for her support; that after his departure she heard nothing from him and received no money from him; and that defendant sold his business because his sons refused to continue in business with him. The affidavit of Roland substantiates plaintiff's affidavit in regard to defendant's physical condition during the past few years and also the reason for defendant selling his business.

Plaintiff's attorney, in his affidavit, stated among other things that when the case was called for trial at the February term, defendant's attorney notified the court that defendant had informed him that he had gone away on a trip for a few days but that defendant would keep in touch with him and would be available in a few days for the trial of the case. The affidavit also states that before it

was arranged between counsel to set the trial for June 2, the judge, who ultimately tried the case, was called. Further, the affidavit of plaintiff's attorney discloses that he was told by the officers of the Northwestern National Bank of Minneapolis that they were going to notify defendant of the circumstances surrounding the outstanding bank money order and that he was thereafter informed that defendant had attempted to negotiate for collection either the cashier's checks or the bank money order but had been turned down by the bank.

Defendant filed an affidavit of prejudice against the judge who had presided at the trial of the case, and thereafter the motion was brought on for hearing before one of the other judges of the seventh judicial district.

■ Defendant's sole assignment of error is that the district court erred in denying his motion to vacate the divorce judgment and to set the action down for a trial on the merits. He first contends that the judgment should be set aside since it was rendered under circumstances that constituted a fraud upon him and upon the administration of justice. Defendant recognizes that Rule 60.02 of the Rules of Civil Procedure, which sets out the grounds available in most cases for relieving a party from a final judgment, is expressly not applicable to a divorce decree.[2] However, he relies on the case of Cahaley v. Cahaley, 216 Minn. 175, 12 N. W. (2d) 182, 157 A. L. R. 1, where this court exercised its inherent power to administer justice and its guardianship over marriage and divorce to relieve a defaulting party from a divorce decree on the grounds that to deny such relief under the circumstances there presented would have resulted in a fraud upon both the defaulting party and the administration of justice.

In support of his position, defendant asserts that a twofold fraud has been perpetrated upon him and upon the court. In the first

---

[2]Rule 60.02 states: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment *(other than a divorce decree)*, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; * * *." (Italics supplied.)

place he contends that the divorce was granted upon testimony of plaintiff which was not subject to cross-examination, which was to a great extent not corroborated,[3] and which for the most part is denied by defendant in his affidavit of merit filed with his motion to vacate and set aside the divorce judgment and that it was obtained upon evidence which was so misleading as to constitute fraud. Defendant, however, has produced no proof that plaintiff's or Roland Stromsborg's testimony was in any way false, other than his mere denial of the truth of parts of their testimony. Since such denials merely raise issues of fact which would have been properly within the determination of the district court, we cannot say that the divorce in question was granted upon evidence so misleading as to constitute fraud upon defendant or the trial court.

The other basis upon which defendant relies for a finding of fraud upon himself and the court is alleged incompetence or negligence on the part of his former attorney or, even worse, the suggestion of possible collusion between his former attorney and plaintiff's attorney which resulted in the loss of defendant's substantive right of defense to the divorce action. Defendant charges in effect that his attorney failed to inform him regarding current developments in the divorce action until three days before the date of the trial; that he agreed with plaintiff's counsel as to the date of the trial without consulting defendant to ascertain whether it was physically possible for him to be present; that he made no effort to obtain a continuance of the trial until defendant's return in August; and that he failed during the trial to cross-examine any of plaintiff's witnesses or make any effort to exclude incompetent and irrelevant evidence. In reply, plaintiff argues that defendant's attorney, under the circumstances, did all he could reasonably be expected to do for his client and furthermore that the facts make it appear that defendant voluntarily and deliberately fled the jurisdiction of the court to avoid trial, with no intention of returning.

---

[3]Defendant's contention that plaintiff's testimony was not sufficiently corroborated by Roland Stromsborg's testimony is not supported by the record.

A cursory examination of the relevant events and happenings in the instant case might at first lead one to adopt the position that defendant was denied his day in court because of negligence on the part of his attorney. However, once a careful study is made of the chain of circumstances surrounding the divorce action, it becomes apparent that defendant by his own actions, the nature of which cast serious doubt upon the good faith of his intentions, placed his attorney in an extremely difficult position, especially because of the duty of an attorney to serve both his client and the court. The facts disclose what appears to be a definite pattern by which defendant conducted himself in general disregard of his attorney and the legal process.

Although it must have been known to defendant, if by no other way at least from the terms of the court order of February 4, 1953, that the divorce action would likely be tried prior to the first of March, he nevertheless went ahead and quietly planned a trip to Norway without once disclosing that fact either to his attorney or to the plaintiff. In fact, the affidavits of plaintiff and her attorney disclose, without contradiction by defendant, a persistent plan by defendant to conceal his intention to make the trip. Plaintiff's attorney states that when the case was called for trial at the February term of court, defendant's attorney notified the court that he had been informed by his client that he had gone away on a trip for a few days but would be available for trial in a few days. The statement to the court by defendant's attorney just prior to the trial on June 2 also adds support to this contention. Plaintiff, in her affidavit, discloses that she met defendant on the street in St. Cloud in early February and was told by him that he was going to Quincy, Massachusetts, to obtain witnesses on his behalf. There was, however, no mention of his forthcoming trip to Norway. Defendant admits he so met plaintiff and advised her he intended to take a trip, but defendant in his affidavit does not specifically state that he told plaintiff of his intention to journey to Norway nor does he deny plaintiff's version of the conversation. Although defendant wrote to his attorney from New York on the 24th of February

just prior to his leaving the country, he said nothing in that letter regarding the pending lawsuit or the fact of his leaving the country. Such was the case despite the fact that up to that time defendant had never disclosed to his attorney his intention to go to Norway and, according to the affidavit of plaintiff's attorney, had informed his attorney before leaving on the trip that he would keep in touch with him and be available for trial in a few days.

When defendant left for Norway he took with him nearly all his worldly possessions, including his automobile, various household items which had been removed from the homestead of the parties in violation of the court's order, and over $50,000 represented in the main by the previously mentioned two cashier's checks and the bank money order. After leaving he never once contacted his attorney or the court in any manner until his cablegram was sent in reply to the cablegram he received notifying him of the date of trial. In addition during the time of his absence defendant failed to pay any support money to his wife which she claims forced her, in order to support herself, to sell most of the household goods not taken by defendant.

It is in the context of this pattern of concealment and apparent disregard for the legal process that defendant's attorney was required to act. He first learned, through indirect sources in approximately the middle of March, that his client was in Norway. Immediately thereafter the case, although scheduled to be tried during the March term of court at Milaca, was indefinitely delayed until a date to be later agreed upon. Defendant's attorney continued to receive no word from defendant as to his future intentions or his whereabouts. In the light of this fact and the circumstances under which defendant departed from the country, defendant's attorney had strong reason to believe that his client had no intention to return. Perhaps it was with this in mind that the court was consulted for approval before the second of June was set as the date for the trial. Defendant alleges that his attorney acted negligently when he failed to seek a continuance of the trial after learning by cablegram that defendant would not be available for trial until August. How-

ever, in evaluating this action it must be remembered that the trial had already been delayed nearly four months, that defendant had paid plaintiff no support since February, and in addition that defendant's attorney was never once informed by defendant or anyone on his behalf of any reason justifying a further continuance of the case. Further, the record discloses that defendant's attorney described the existing situation to the trial court in his statement to the court just prior to trial and that thereafter the court ordered the trial to be held.

Defendant attempts in part to explain his conduct upon the basis that he left St. Cloud assuming the case would be continued until September. Defendant, however, makes no claim that his attorney gave him any assurance of a continuance, other than to state that he would try to arrange one. Neither does the defendant say that he contacted or tried to contact his attorney to ascertain whether or not a continuance had been arranged, even though he was about to leave the country for a number of months. Further, defendant produced no affidavit from his former attorney in order to sustain his claim that his attorney agreed to try to continue the case until September. It would be permissible for the district court to infer from this fact that any information obtained would be unfavorable to defendant's position. It should also be noted that defendant's attorney, in his statement to the court just prior to trial, made no mention of the fact that defendant ever requested a continuance until September and clearly the actions of defendant's attorney indicated that no such request was ever made.

Defendant also attempts to justify his actions upon the grounds that he went to Norway to take a long rest in order to save his life and that at the time he left this country he was a sick and confused man. Plaintiff and Roland Stromsborg, in their affidavits, advance facts which, if true, tend to greatly minimize the extent of defendant's illness. This evidence alone would probably justify the district court in rejecting the defendant's explanation for not being present at the trial and not informing his attorney either of his intention to travel to Norway or his whereabouts while in

Norway. However, even assuming that defendant was an extremely sick man at the time he left for Norway, this fact would not compel the district court to excuse his failure to notify either the court or counsel of his intended journey under the circumstances of this case. We conclude, therefore, that the record amply supports the district court's finding that the judgment in question was obtained through the regular processes of the law and without any fraud upon the court or the defendant. Accordingly, its finding against defendant on this issue should be sustained. Cf. Wilhelm v. Wilhelm, 201 Minn. 462, 276 N. W. 804; Scribner v. Scribner, 93 Minn. 195, 101 N. W. 163.

■ Next, defendant points out that aside from the divorce decree, that part of the judgment which relates only to the property rights of the parties comes within the terms of Rule 60.02 and thus may be set aside for mistake, inadvertence, surprise, or excusable neglect without the necessity of showing fraud.[4] He argues that the same facts which allegedly compel a finding of fraud upon himself and the administration of justice are sufficient to constitute mistake, inadvertence, surprise, or excusable neglect within the contemplation of Rule 60.02 so as to entitle him to have set aside so much of the judgment as deals with the property rights of the parties. Defendant's motion as presented to the district court was stated solely in terms of vacating and setting aside the whole judgment and divorce decree and for a trial of the case on the merits, there being no motion in the alternative to vacate and set aside only that portion of the judgment which related to the property rights of the parties and for a new trial of that issue in the event his motion to vacate the whole judgment and for a new trial of all the issues were denied. See, Wilhelm v. Wilhelm, 201 Minn. 462, 276 N. W. 804. Since it does not affirmatively appear from the record that the district court was squarely confronted with a determination of whether that por-

[4]Defendant cites in this connection Hoff v. Hoff, 133 Minn. 86, 157 N. W. 999, which was decided prior to the adoption of Rule 60.02. However, the rule of the Hoff case is still good law since Rule 60.02 is substantially similar to the statute controlling the vacation of final judgments which was in existence at the time of that decision.

tion of the judgment which related to property rights, as distinguished from the marriage status, should be vacated and set aside, it is doubtful whether there is anything further before us to review in this connection.

In any event, it is apparent from the memorandum attached to the district court's order denying defendant's motion that the position it adopted in rejecting defendant's motion as made, would preclude any finding by it of mistake, inadvertence, surprise, or excusable neglect within the meaning of Rule 60.02 on the present showing. In its memorandum the district court expressly adopted as the basis for its action the position that defendant acted without good faith toward both the court and plaintiff in departing from the United States under circumstances indicating an intention on his part to obstruct the process of the law. Furthermore, for the reasons previously advanced with respect to the fraud issue, had the question of vacating and setting aside that portion of the judgment which concerned the parties' property rights been properly presented to the district court, we could not say that a denial of such relief would constitute an abuse of judicial discretion on the present record. See, Randall v. Randall, 133 Minn. 63, 157 N. W. 903; 10 Dunnell, Dig. (3 ed.) § 5025. No claim is made that the property awarded plaintiff exceeded the maximum allowance authorized by statute and we can find no basis for such a claim on the present record.

In accordance with the views herein expressed the order and judgment appealed from should be affirmed.

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that in the interest of justice the judgment should have been vacated and a new trial ordered insofar as the property settlement or award is concerned. Defendant has never been afforded an opportunity of appearing or presenting evidence as to the true value of his assets. Such evidence might result in an award substantially different from that heretofore made in the action.

According to defendant's statement, he left the United States for Norway in February 1953 in the belief that his case would not be reached for trial until September of that year. The evidence is clear that he intended to return in time to defend the litigation. He booked a round-trip passage for his car and endeavored to obtain one for himself but could not secure the return trip through no fault of his own.

Much is made of the fact that defendant withdrew substantial funds from his depositories, respondent suggesting that such actions gave rise to an inference that he did not intend to return from his trip. The record discloses that such sums were withdrawn December 22, 1952, prior to the commencement of this action, and suggested that they were withdrawn principally because of defendant's fear that plaintiff might exercise control over them in some manner or other, particularly those deposited in her name as trustee. I cannot see that defendant acted in violation of the trial court's authority in this respect or how any adverse inference can be drawn therefrom. His actions prior to the commencement of the divorce should not be construed as violative of the restraining order subsequently made.

On March 16, 1953, defendant's counsel was aware of the fact that defendant was in Norway, and the court was thus advised on that date. No attempt was made to communicate with him as to the status of his case at that time. Toward the end of May his counsel met with plaintiff's counsel and agreed with the latter that the case be set for trial June 2, 1953. Defendant had not been consulted with reference thereto, and it was known that it would be impossible for him to return by that date. A cablegram was sent to him in Norway on May 30, 1953, about three days before trial, advising him that his case was set for hearing June 2, 1953. He immediately forwarded a cablegram to his attorney informing the latter that his first opportunity to return would bring him back toward the latter part of August 1953. This cablegram was received prior to the date set for trial, and plaintiff's attorneys and the court were both advised of its delivery.

Thereafter defendant's counsel appeared at the trial and noted his appearance but made no motion or effort to have the trial continued until defendant's return. The trial proceeded as if by default. No evidence was submitted on behalf of defendant with reference to the value of the assets which defendant owned, and no effort was made to cross-examine plaintiff's witnesses on this issue. As a result an absolute divorce was granted to plaintiff, and she was awarded judgment against defendant in the sum of $45,390.85 as permanent alimony and property settlement, a sum which the court found equal to one-half the value of defendant's assets. Notes in the sum of $8,300 were given their full face value in arriving at the total valuation of such assets. From a casual examination of defendant's inventory, it appears to the writer that the award exceeded the authorized allowance provided for in M. S. A. 518.60.

Upon defendant's return to the United States, he secured his present counsel and promptly moved that the judgment entered in the divorce proceedings be set aside and that a trial on the merits be ordered. Plaintiff has not remarried and has received over $17,000 in cash to apply on her award, so that no possible prejudice could have resulted had the order been granted.

Under Rule 60.02 of the Rules of Civil Procedure the court may relieve a party from a final judgment, other than for divorce, because of "Mistake, inadvertence, surprise, or excusable neglect," or "any other reason justifying relief from the operation of the judgment." This rule supplants M. S. A. 544.32. In construing the latter this court in Hoff v. Hoff, 133 Minn. 86, 88, 157 N. W. 999, 1000, held that:

"* * * It is apparent that the exception referred to in section 7786, G. S. 1913 [M. S. A. 544.32], is confined to that part of the decree in a divorce action which deals with the marriage status and does not embrace the parts which relate to the custody of the children or to alimony."

Thereunder it would seem that in the instant case there was sufficient showing of mistake and inadvertence or excusable neglect to support defendant's motion and that in the interest of justice it

should have been granted insofar as the judgment related to the award of alimony or property settlement.

It is true that defendant did not use good judgment in his actions prior to the trial. I doubt that in his various movements he intended to flaunt the authority of the court. Rather, his actions seem to have been motivated by the bitterness that existed between him and the plaintiff. That he acted with poor judgment because thereof should not form the basis for depriving him of his right to appear and defend the action insofar as it relates to the award or property settlement involved.