### BETTY L. BERG v. ROBERT H. BERG.

244 N. W. 2d 149.

July 2, 1976—No. 45752.

*Wegner, Wegner & Amerman* and *Derck Amerman*, for appellant.

*Freeman, Gill, Prinkey, Stephan & Egan* and *Gerald R. Freeman*, for respondent.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

PER CURIAM.

Appellant, Robert H. Berg, appeals from an order denying his motion for amendment of a decree and judgment of dissolution of marriage. We affirm.

On October 11, 1973, a decree and judgment was entered dissolving the marriage of appellant and respondent, Betty Lou Berg. Pursuant to a stipulation between the parties, the judgment granted respondent the fee title to the homestead. Other portions of the judgment were modified on June 7, 1974, but the

amended judgment still provides that respondent receive the homestead. Respondent sold the homestead property in June, and on July 12, 1974, appellant moved for a further modification of the judgment on the ground that respondent had fraudulently misrepresented the value of the homestead to him. As relief he requested that the judgment be amended to provide that the homestead be held by both appellant and respondent as tenants in common and that the proceeds of the sale of the house be divided equally between them. Subsequently, appellant amended his motion so as to request only that the proceeds from the sale of the property be divided equally between appellant and respondent.

A hearing was held before a family court referee, and the evidence adduced showed that the parties bought their home in December 1971 for $35,000. In the spring of 1973 they agreed that respondent should take the home as part of the property settlement in the action for dissolution of marriage. At that time respondent, who had been selling real estate some 6 months, told appellant she thought the house was worth approximately what they had paid for it in 1971. Respondent testified in the hearing before the referee that in the spring of 1973 she did indeed think the house was worth approximately the same price the parties had paid for it, and that her opinion was based on sales of comparable properties and other people's opinions at the time.

Respondent spent some $8,400 on various items to improve the house.[1] She first tried to sell the house in May 1974 at a price

---

[1] Respondent installed new carpeting throughout the upper level bedrooms and the living room and dining room; repainted every room; installed new bedroom curtains and purchased bedspreads (which remained with the house); installed some new lighting fixtures; repaired some ceramic tile, installed new bath accessories, and painted and papered the bathroom; installed a new refrigerator, dishwasher, and water softener; replaced most of the furnace; converted a laundry room in the basement into another bedroom and painted other unfinished basement areas; added a shower to a half-bath; removed numerous dead trees from the yard; painted the exterior of the house; installed a gas barbecue grill on the patio; and made other necessary repairs to the property.

of $43,000. She agreed with the prospective purchasers on a price of $40,000, which she thought was "a little low, but it was all right." The sale was not completed because the buyers decided the house was too big. Respondent testified that in the spring of 1974 she thought the house was worth a maximum of $47,000, but after hiring an independent appraiser she found it was worth more. In June 1974 she sold the house for $54,700.

Appellant testified that he was a businessman with business experience, but that he had a feeling of complete trust in respondent in the spring of 1973. He testified that respondent told him she considered the value of the house at that time to be approximately $35,000, and he relied on that figure.

Appellant's expert appraiser testified that in September 1973 (the date the parties' property agreement was executed), the house was probably worth $53,500, based on a cost approach. Respondent's expert appraiser arrived at figures of $38,900, based on a direct sales comparison approach, and $40,500, based on a cost approach, as of May 1, 1973.

On this evidence the family court referee found, "That there was such a material misrepresentation by [respondent] that a division of the proceeds should be made on an equal basis." Respondent objected, and the district court, family court division, rejected the findings of the referee. The district court found that the referee's finding was clearly erroneous and found instead that there was no material misrepresentation of fact. Accordingly, it denied appellant's motion for redistribution of the proceeds from the sale of the homestead. Appellant appealed to this court from the district court's order denying his motion.

Rule 60.02, Rules of Civil Procedure, allows the court on motion and upon such terms as are just, to relieve a party from a final judgment and order such other relief as may be just for enumerated reasons which include fraud, misrepresentation, or other misconduct of an adverse party. While the rule on its face does not allow relief from that portion of a decree and judgment which actually dissolved the bonds of matrimony, we have al-

lowed a party to attack the other portions of the judgment under such circumstances as amount to a fraud on the court and the administration of justice. Bredemann v. Bredemann, 253 Minn. 21, 91 N. W. 2d 84 (1958); Johnson v. Johnson, 243 Minn. 403, 68 N. W. 2d 398 (1955).

Appellant's allegation in this case was that respondent had misrepresented the value of their house to him, and that at the time of their divorce it was not worth approximately $35,000 as she represented, but was actually worth some higher value. Absent evidence to the contrary, it may be presumed that if, after all other property had been divided between the parties, some additional property had been discovered, it would have been divided equally between them; and thus it is surprising that appellant without presenting evidence to support such a measure of relief seeks one-half of the entire proceeds from the sale of the house (which reflect both inflation and the improvements made by respondent), rather than one-half of the difference between the value of the house as perceived in 1973 and its actual value at that time.

Not every misrepresentation will justify modification of a judgment. Misrepresentations vary in character from innocent to negligent to intentional, and in their effect they vary from great to negligible to none at all. Rule 60.02 contemplates that in ruling on a motion to modify a judgment on the ground of misrepresentation the court will balance the character and effect of any misrepresentation against the interest of parties in having their disputes settled with finality.

In the case at bar appellant does not argue that the district court's order is not supported by the evidence. He argues only that because the referee found respondent had made a misrepresentation to appellant which justified modification of the judgment, the district court was, pursuant to Rule 53.05(2), Rules of Civil Procedure, bound by the referee's findings unless they were clearly erroneous. This issue was thoroughly considered and decided otherwise in Peterson v. Peterson, 308 Minn. 297,

242 N. W. 2d 88 (1976). In that case we held that all recommended findings and orders of a family court referee in custody matters are advisory only and possess no more than prima facie validity. 308 Minn. 304, 242 N. W. 2d 93. While that case dealt specifically with custody matters, its reasoning applies as well to other matters before the family court. While it may be that custody matters, because of their special importance, require even greater diligence by the district court in reviewing the findings of a family court referee, even in those matters relating only to property the referee is provided to assist the judge of the family court division, and the court remains free to exercise its judgment and discretion.

The assistance which a referee renders by narrowing and focusing the issues should not be understated. In many cases once the issues being litigated have been sharply drawn by a hearing before a referee, the parties will recognize that further litigation before a judge of the district court would be unproductive. Even if the district court is called upon to review a referee's decision, the time required to decide the case will ordinarily be greatly reduced by virtue of the referee's prior work.

We hold that the findings of the family court referee in the case at bar were properly rejected by the district court. Respondent is allowed $350 as attorneys fees.

Affirmed.