**In re the Marriage of Daniel W. LINDSEY, petitioner, Appellant,**

v.

**Roseann LINDSEY, Respondent.**

No. C8–84–2233.

Supreme Court of Minnesota.

June 6, 1986.

John R. Wylde, Jr., Minneapolis, for appellant.

M. Sue Wilson, Jane Binder, Minneapolis, for respondent.

AMDAHL, Chief Justice.

Appellant, Daniel W. Lindsey, obtained further review of a decision of the Court of Appeals raising the question of whether a dissolution decree may properly be modified 6 years after it had originally been entered to award the respondent Roseann Lindsey a greater equity in the parties' homestead. The trial court allowed the modification pursuant to Minn.R.Civ.P. 60.-02 and the Court of Appeals affirmed. We affirm as modified.

On October 6, 1977, a judgment and decree was entered in Hennepin County Family Court, dissolving the marriage of Daniel and Roseann Lindsey. The parties were originally married on April 1, 1969, and in 1974 or 1975, their marriage began to deteriorate. Daniel sought the advice of an attorney in September 1975 and a petition for dissolution was filed. Daniel's attorney agreed to represent both Daniel and Roseann after Roseann allegedly waived her right to independent representation and signed an agreement to that effect. On September 25, 1975, Roseann and Daniel entered into a temporary stipulation and a final stipulation concerning dissolution of their marriage and distribution of the marital property. Roseann was not represented by independent counsel when these stipulations were executed. The final stipulation provided that Roseann would receive $100 a month per child as child support, subject to annual increases. In addition, Roseann was awarded alimony in the amount of $10,000 and residence in the homestead until the youngest child reached age 18. Daniel assumed the obligation for mortgage payments, taxes and insurance. The parties agreed to hold the property as tenants in common. Upon its sale, Roseann was to receive $12,500, one-half of the equity in the home as valued in 1975.

The final stipulation, as modified, served as the basis for the final dissolution judgment and decree entered on October 6, 1977. It was later amended to include a post-decree stipulation involving a pension plan owned by Daniel. Roseann waived any interest in the pension plan in consideration for the $10,000 in alimony awarded to her. Roseann was not represented by independent counsel at either the entering of the final decree or the signing of the post-decree stipulation.

During the entire dissolution period, Roseann was suffering from what the Court of Appeals characterized as a "severe mental illness." She was diagnosed as manic depressive, suffering from periodic blackouts and an inability to remember specific events. She would "block out" unpleasant events and could not independently remember any event dealing with the dissolution.

Roseann's psychiatrist, Dr. Howard Fisher, testified concerning her condition during the dissolution period to the effect that in 1974, she was severely depressed and afraid of her husband and that this fear had affected her judgment; she would simply "give in" to her husband and was dependent upon him. In addition, Eugene Kemp, a psychologist who had counseled Roseann, testified that she was "very dependent" upon her husband and that Daniel had an "undue influence" upon her. He also testified that Roseann had difficulty dealing with reality and making rational decisions during the period in question.

As indicated, during the dissolution proceedings Roseann had no independent legal counsel present whenever she was requested to sign a document or agree to a change. She did, however, consult an attorney in 1977 at the urging of Dr. Fisher. The attorney reviewed the dissolution proceedings, but it is unclear whether he advised Roseann with respect to her dissolution rights. Roseann discharged the attorney from the case just prior to the entry of the judgment and decree. Roseann testified that the reason she was never independently represented when documents were signed and the reason she discharged her attorney in 1977 was out of fear of her husband. She testified that Daniel told her he would take care of her and that he threatened to take her children away if she sought legal representation.

After the judgment and decree was entered in October of 1977, Roseann's condition improved. At this time, at Kemp's urging, Roseann hired an attorney in September 1979 and brought a motion to set aside or modify the 1977 judgment and decree upon the bases of fraud and duress. This motion was similar to the motion that is the subject of this appeal. The attorneys for the parties and family court agreed to modify the original decree; Roseann, however, suffered a reoccurrence of her previous emotional problems and refused to sign the agreement. The family court then dismissed the motion without prejudice to either party and ruled that the motion could be brought again in the future.

In January 1983, Daniel brought a motion to modify the 1977 decree to award him sole ownership of the homestead subject to an equitable lien in favor of Roseann in the amount of $12,500. The motion was based upon allegations that Roseann's neglect of the property caused a diminution in value. Roseann was represented by an attorney from the Minnesota Legal Aid Society, who did not move to modify the original homestead provision of the decree on the grounds of fraud and duress at this time. Roseann's counsel testified that no such countermotion could have been brought by the Legal Aid Society because it would have been a "fee generating case" and thereby prohibited by the Society's policy. Daniel's motion was granted by the district court and Roseann did not appeal this ruling.

On October 27, 1983, Roseann moved the district court pursuant to Minn.R.Civ.P. 60.02(6) to modify the 1977 decree alleging that it was procured by fraud and duress in that she lacked the capacity to understand or agree to the stipulations or final decree. She sought an amendment to award her 50% of the equity in the parties' homestead, rather than the $12,500 which in 1975 represented one-half of the parties' $25,000 equity in the house. She asserted that by 1977, the total equity in the home had increased to $60,000 and by 1983, to $107,000. The trial court granted the motion, overruling a referee's determination that the motion was not timely. The court reasoned that she had moved for relief "as soon as practicable in light of her illness" and that the 1977 decree required modification because it in-

cluded terms that were "grossly unfair and inequitable" to Roseann.

■ Daniel appealed to the Court of Appeals which affirmed the district court's decision, stating that "[t]o deny relief here would be to create an unconscionable result." *Lindsey v. Lindsey*, 369 N.W.2d 26, 29 (Minn.App.1985). The modification was allowed pursuant to Minn.R.Civ.P. 60.02(6) although by its specific terms, this rule excludes divorce decrees from its purview. *See id.* (Rule 60.02 applies to a final judgment "other than a divorce decree"). The court relied upon this court's decision in *Bredemann v. Bredemann*, 253 Minn. 21, 24, 91 N.W.2d 84, 87 (1958), where we stated:

> Rule 60.02 of the Rules of Civil Procedure specifies the conditions or situations under which a party may be relieved from a final judgment. Divorce decrees are specifically omitted from the provisions of the rule. However, this court has held that the rule in no way affects the inherent power of the court to grant relief to a party who has been denied an opportunity to defend in a divorce action under such circumstances as amount to a fraud on the court and the administration of justice.

The Court of Appeals and trial court apparently interpreted *Bredemann* as authority for a district court to modify divorce decrees under Rule 60.02 where circumstances exist that amount to a fraud on the court and the administration of justice. This interpretation is incorrect, however, because the pertinent language in *Bredemann* does not alter the specific directive of Rule 60.02 that dissolution decrees were to be excluded. Instead, the language in *Bredemann* refers to a court's "inherent power" to set aside a final judgment where it determines that such a judgment amounts to fraud upon the court. Modification is here appropriate only upon such a showing.

Although the instant motion was filed pursuant to Rule 60.02(6), we choose to treat it as a motion to exercise the court's inherent power to modify a final divorce decree based upon an allegation of fraud on the court.[1]

■ The recorded events lead to the conclusion that modification was proper. Roseann clearly lacked the capacity to validly enter into a stipulated dissolution decree. *See Krueger v. Zoch*, 285 Minn. 332, 334, 173 N.W.2d 18, 20 (1969). Her mental and emotional condition at the time of the dissolution precluded her from being able to fairly and reasonably understand the matters under consideration. Roseann's own testimony, supported by others, concerning her inability to remember events surrounding the dissolution and her dependence on her husband demonstrate that her condition had a sustantial effect upon her capacity. Sufficient evidence of fraud on the court and the administration of justice exists to warrant setting aside the dissolution decree under *Bredemann*. We must point out, however, that a finding of fraud upon the court and the administration of justice must be made under the peculiar facts of each case. Because we are able to make such a finding in this case, we uphold the Court of Appeals decision, as modified by this opinion. ·

Affirmed as modified.

---

1. In the future, however, motions to modify divorce decrees brought under Rule 60.02 should not be entertained by the district courts. The district courts lack jurisdiction under Rule 60.02 to consider such motions. Only when facts are alleged that amount to fraud on the court as enunciated in *Bredemann* may a district court set aside a divorce decree.