In re the Marriage of Walter Strong ADAMS III, Petitioner, Respondent,

v.

Mary Sue Anderson ADAMS, Appellant.

No. CO–86–688.

Court of Appeals of Minnesota.

Sept. 23, 1986.

Review Denied Nov. 19, 1986.

Edward F. Kautzer, Ruvelson & Kautzer, St. Paul, for respondent.

Rebecca Hanson Frederick, Messerli & Kramer, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Mary Sue Anderson Adams appeals from the trial court's denial of her motion to vacate a dissolution judgment and decree. We affirm.

## FACTS

Respondent Walter Strong Adams III commenced the dissolution action on November 19, 1984. The parties entered a stipulation into the record in open court on the day set for trial, March 11, 1985. Both parties were questioned as to their understanding of the stipulated agreement and as to whether or not they agreed to it. The stipulation was reduced to writing, and on March 21, 1985, the court entered its judgment and decree incorporating the stipulation. The attorneys for both parties approved the stipulation.

On March 13, 1986, the trial court heard appellant's motion for relief from the judgment and decree under Minn.R.Civ.P. 60.-02(1), (2), and (3), based on mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; and fraud and misrepresentation. Appellant claims that neither the stipulation nor the judgment were entered into in a voluntary or informed manner. She points to portions of the transcript of the stipulated agreement and to her psychological difficulties at the time.

During the March 11, 1985, hearing, appellant expressed some confusion.[1] However, she agreed, when questioned, that she had consulted with her attorney regarding the stipulation that had been read into the record, that she understood it, and that she was in agreement with it. She also agreed that various items had been discussed between the parties and their attorneys. The court questioned appellant, and she agreed that she had authorized her attorney to enter into the stipulated agreement for her. The court accepted the stipulation as equitable.

On the issue of her mental state, appellant claims that her unwillingness to accept the fact that her marriage was about to be dissolved, as evidenced by her statements at the March 11 hearing, made it impossible for her to consider the financial aspects of the dissolution settlement in an informed manner. Her affidavit states that she was under a great deal of stress because respondent wished to end their thirty-nine year marriage; that she was diagnosed by her family doctor as suffering at the time from a grief reaction and depression; and that she was seeing two psychologists regularly at the time. Respondent left the homestead in August 1984. The default hearing was March 11, 1985.

Appellant also asked the court to grant relief from the judgment and decree because respondent failed to disclose certain marital assets and misstated the value of other marital assets. She claims that he failed to disclose numerous stock holdings and dividend income totaling more than $33,207. The marital estate totaled approximately $500,000.

Appellant also argues that under Minn.R.Civ.P. 60.02, newly discovered evidence warranted relief from the judgment and decree. Specifically, she alleges that a significant portion of the parties' stock portfolio as well as the homestead were nonmarital assets, traceable to three inheritances she received during the marriage. She argued that her mental condition at the time of the dissolution prevented her from discovering her nonmarital assets.

The trial court denied the motion to vacate the stipulation and judgment and decree, relying on *Pekarek v. Wilking,* 380 N.W.2d 161 (Minn.Ct.App.1986) and *Tomscak v. Tomscak,* 352 N.W.2d 464 (Minn.Ct.App.1984). Both *Pekarek* and *Tomscak* concern Rule 60.02 motions.

## ISSUE

Did the trial court err by refusing to set aside the stipulation or the judgment which incorporated it?

## ANALYSIS

Appellant moved for relief under Minn.R.Civ.P. 60.02. In *Lindsey v. Lind-*

---

1. Mr. Cutting [attorney for appellant]: And are you in agreement with this as the basis for a property division and your future income with respect to the dissolution of the marriage?

   The Respondent [Mary Sue Adams]: I guess that's all I can say.

   Mr. Cutting: You do agree that what Mr. Kautzer has stated is the agreement that we've arrived at, is that correct?

   The Respondent: Agreement for what?

   Mr. Cutting: For a property division and income for you?

   The Respondent: I agreed that we've discussed it, is that what you're asking me?

   Mr. Cutting: And what he has stated is what we—what you and I have talked about?

   The Respondent: I agree we've talked about it. I do not agree that it's for dissolution of marriage. * * * I'm saying that I don't want a divorce and I will not say that I agree to it under any circumstances. I agree that you've talked to me and you told me that is the settlement that Walter wants to make.

*sey*, 388 N.W.2d 713 (Minn.1986), the supreme court held that the language in Rule 60.02, which excludes dissolution judgments from its purview, prohibits courts from applying Rule 60.02 to any portion of a dissolution judgment:

> In the future * * * motions to modify divorce decrees brought under Rule 60.02 should not be entertained by the district courts. The district courts lack jurisdiction under Rule 60.02 to consider such motions.

*Lindsey*, 388 N.W.2d at 716.[2] The court may use its " 'inherent power' to set aside a final judgment where it determines that such a judgment amounts to fraud upon the court." *Id.* "Only when facts are alleged that amount to fraud on the court as enunciated in *Bredemann* may a district court set aside a divorce decree."[3] *Id.*, n. 1. This standard changes prior case law by holding that the other grounds for relief available under Rule 60.02, such as mistake, excusable neglect, or newly discovered evidence are no longer available grounds for relief from a dissolution judgment.

Appellant's allegations of nondisclosure of stock shares, dividends, and the full amount of respondent's earnings do not, as a matter of law, constitute fraud on the court.

> It is recognized that the failure by one party to disclose pertinent information to a proceeding is not "fraud on the court." *Kupferman v. Consolidated Research and Mfg. Corp.*, 459 F.2d 1072 (2d Cir. 1972); *Kerwit Medical Products v. N. &*

*H. Instruments*, 616 F.2d 833 (5th Cir. 1980).

*Beugen v. Beugen*, 352 N.W.2d 821, 823 (Minn.Ct.App.1984). The trial court did not clearly err by refusing to reopen the judgment and decree due to the alleged nondisclosure.

*Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 765–66 (Minn.1983) states:

> The general rule is that parties to a marital dissolution proceeding have a duty to make a full and accurate disclosure of all assets and liabilities to facilitate the trial court's property distribution.

The issue in *Ronnkvist* was narrow.

> Our inquiry is therefore limited to whether a party to an oral stipulation for the distribution of property has a duty to disclose property acquired after the oral stipulation but before the entry of the judgment and decree, and whether the court's award is supported by the record.

*Ronnkvist* 331 N.W.2d at 765.

Facts alleged to constitute fraud on the court must be evaluated by trial courts on a case by case basis. A breach of the duty to disclose, depending on the extent of the failure, amount of property involved, seriousness, and willfulness may support allegations of fraud serious enough to justify setting aside a judgment. Here, we find that the trial court did not abuse its discretion by not setting aside the judgment and decree, based on the facts presented to it.

Appellant also argues that her mental condition rendered the judgment and de-

---

**2.** The supreme court did not address *Berg v. Berg*, 309 Minn. 281, 283, 244 N.W.2d 149, 151 (1976), which explained that Rule 60 merely prohibits relief from "that portion of a decree and judgment which actually dissolved the bonds of matrimony." *Cahaley v. Cahaley*, 216 Minn. 175, 177, 12 N.W.2d 182, 184 (1943) indicated that the dissolution exclusion was "for the reason that second marriages may occur and the rights of children thereof be affected." *See also Stromsborg v. Stromsborg*, 242 Minn. 235, 248, 64 N.W.2d 499, 506 (1954) (that part of the judgment, which relates only to the property rights of the parties comes within the terms of Rule 60.02, and thus may be set aside for mis-

take, inadvertence, surprise, or excusable neglect without the necessity of showing fraud); *Swenson v. Swenson*, 257 Minn. 431, 101 N.W.2d 914 (1960).

**3.** *Bredemann v. Bredemann*, 253 Minn. 21, 24–5, 91 N.W.2d 84, 87 (1958) stated the rule that dissolution judgments may be set aside "under such circumstances as amount to a fraud on the court and the administration of justice. * * * To be fraud on the court and the administration of justice, there must be found to be fraud on [the wife]."

cree a fraud on the court. In *Lindsey* the wife

> clearly lacked the capacity to validly enter into a stipulated dissolution decree. Her mental and emotional condition at the time of the dissolution precluded her from being able to fairly and reasonably understand the matters under consideration.

*Lindsey*, 388 N.W.2d at 716. In *Lindsey*, the wife could not remember events connected with the dissolution. Her psychologist testified that she was severely depressed at the time of the dissolution, she was very dependent on her husband, and she was unduly influenced by the husband. The supreme court affirmed this court's reversal of the trial court's refusal to vacate the judgment.

■ Here, appellant makes similar allegations. But her mental difficulties are not as severe and no psychologist or doctor confirms her statements. Given the lack of corroboration, the trial court did not abuse its discretion in disbelieving her claims and denying her motion to vacate the judgment on this basis.

The approximate property division follows:

| | Appellant | Respondent |
|---|---|---|
| Homestead | 75% ($135,000 – 165,000) | 25% ($45,000 – 55,000) |
| Stocks | $111,000 | $ 26,000 |
| IRA | | $ 5,000 – 6,000 |
| Pension | | $176,900 |
| (Marital | | (31,600) |
| Debts) | | |
| | $246,000 – $276,000 | $231,300 – $232,300 |

■ Appellant claims that the property settlement was grossly unfair because her significant nonmarital interests were not taken into account. She inherited more than $100,000 during the marriage which she claims she can trace to the parties' home and stock portfolio. While appellant did document the fact of an inheritance, she produced little to support her tracing claim. Appellant claims that nearly all of the homestead was funded by nonmarital funds, and that an unspecified portion of the stock portfolio was comprised of her inherited stocks, treasury bills, and proceeds from the sale of inherited stocks. With what documents there were before the court, it did not err in concluding that appellant did not carry her burden of tracing the nonmarital funds and proving up her nonmarital interest. The property settlement which resulted in over fifty percent to appellant is within an equitable range, even taking into account the largely unsupported claim that appellant's non-marital assets were ignored. *See Johns v. Johns*, 354 N.W.2d 564 (Minn.Ct.App.1984).

## DECISION

The trial court did not err by denying appellant relief from the dissolution judgment and decree.

Affirmed.