**In re the Marriage of David Brian MOIR, Petitioner, Respondent,**

v.

**Janell MOIR, Appellant.**

**No. CX–86–1590.**

Court of Appeals of Minnesota.

Feb. 10, 1987.

Brian L. Solem, West St. Paul, for respondent.

Beverly Balos, Paul D. Krueger, Student Atty., Civil Practice Clinic, Minneapolis, for appellant.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

The trial court granted respondent David Moir's petition and entered a default judgment that dissolved respondent's marriage to appellant, Janell Moir. The judgment also granted custody of the parties' three year old daughter, R.M., to respondent. Appellant moved to have the judgment vacated and that motion was denied. Appellant argues that the trial court abused its discretion when it refused to vacate the custody portion of the judgment because the totality of the circumstances amounted to fraud on the court and equitable principles warranted vacation of the judgment. We reverse and remand.

## FACTS

On July 15, 1985, respondent served appellant with a summons and petition seeking dissolution of their marriage and custody of R.M. In response, appellant sought legal assistance from Southern Minnesota Regional Legal Services. Eve Herschcopf of that office communicated with respondent's attorney and asked for an extension to August 30, 1985, to file an answer. Apparently appellant's file was subsequently transferred to another attorney, Peter Rosene.

On September 18, 1985, appellant approached the University of Minnesota Civil Practice Clinic (the Clinic) for legal assistance. The Clinic received appellant's file from Rosene on October 3, 1985. That file contained a copy of an answer to respondent's summons and petition, but the file did not contain an affidavit of service. The Clinic took no action to confirm that the answer had in fact been served. Nor did the Clinic serve notice of a substitution of counsel. The answer had in fact never been served on respondent or filed with the court.

After receiving no response from appellant, respondent's counsel filed an affidavit of default on October 11, 1985, and a note of issue on December 9, 1985. The record shows that these documents were served on Eve Herschcopf. There is no indication that they were forwarded to the Clinic by Herschcopf or Rosene.

In a letter postmarked December 23, 1985, the Clinic informed respondent's attorney that they were now representing appellant. A hearing on respondent's default motion was held that same day before a referee. Respondent and his attorney attended that hearing. At this time R.M. was in the physical custody of appellant.

In a letter to the referee dated December 30, 1985, respondent's attorney forwarded proposed findings of fact and also forwarded a copy of the Clinic's letter stating that it was now representing appellant. Respondent's attorney did not notify the Clinic that the default hearing had occurred.

Without contacting the parties further, the referee issued his recommended findings, conclusions and judgment on January 2, 1986.

The referee's findings indicate that they are based on the sworn testimony of respondent and all the "files records and proceedings herein." The only documents entered in the district court file prior to the default hearing were the summons and petition, the affidavit of default, and the note of issue. Based on this information the referee found that respondent was a fit and proper person to have custody of R.M., and that custody in respondent would be in R.M.'s best interests. Respondent was granted sole legal and physical custody of R.M.

The findings describe in detail instances of appellant's inadequate care of R.M. The record before this court, however, does not evidence any documentation of these allegations. Unfortunately, appellant did not provide this court with a transcript of the default hearing so this court cannot determine if these allegations were presented by respondent at the hearing or if they came from another source.

The referee's recommended findings, conclusions and judgment were adopted by the trial court on January 6, 1986. Notice of entry of judgment was served by mail on appellant's attorney on January 9. No attempt was made to appeal from the default judgment. Instead, on February 11, 1986, appellant filed an answer and counter petition seeking to have the default judgment vacated. Both parties filed several affidavits in response to appellant's request to vacate. The affidavits were from individuals who knew or were related to one or both of the parties and present extremely conflicting views about the capabilities and fitness of both appellant and respondent to care for R.M.

A hearing was held before a referee on April 15, 1986, at which time oral arguments were heard, but apparently no testimony was taken. On April 24, 1986, the trial court issued an order adopting the referee's recommended findings. The order found that there was no fraud on the court or on the administration of justice. The order also determined that appellant and respondent were co-primary parents. The referee's findings indicate that no custody study or trial was ordered because the referee believed that these proceedings would not alter his conclusion that it would be in R.M.'s best interests for respondent to have custody. The reasons given for this finding are essentially a reiteration of the affidavits of respondent and his friends and family.

Appellant filed a motion for review of the findings, requesting a reversal or, in the alternative, a custody study. The trial court issued an order affirming the default judgment solely because there was no showing of fraud on the court. The trial court refused to consider other grounds for vacating the judgment and citing *Saturnini v. Saturnini* stated:

"A trial court may only set aside a judgment in a dissolution decree 'where it determines that such a judgment amounts to a fraud upon the court.' *Lindsey v. Lindsey*, [388] N.W.2d [713] (Minn. June 6, 1986) * * *. This court therefore need not review all of the errors claimed by appellant, only the claims relating to potential fraud upon the court." *Saturnini v. Saturnini*, [390 N.W.2d 425 (Minn.App.1986)].

## ISSUE

Did the trial court abuse its discretion when it denied appellant's motion to vacate the custody portion of the default dissolution judgment?

## ANALYSIS

In *Lindsey v. Lindsey*, 388 N.W.2d 713 (Minn.1986), the supreme court reiterated its holding in *Bredemann v. Bredemann*, 253 Minn. 21, 91 N.W.2d 84 (1958), that dissolution judgments are excluded from the provisions of Minn.R.Civ.P. 60.02 but that this exclusion does not affect

the inherent power of the court to grant relief to a party who has been denied an opportunity to defend in a divorce action

under such circumstances as amount to a fraud on the court and the administration of justice.

*Bredemann,* 253 Minn. at 24, 91 N.W.2d at 87.

The trial court refused to vacate the default judgment. It interpreted *Lindsey* to hold that no part of a dissolution judgment can be set aside except upon a showing of fraud on the court. However, a second basis for setting aside a judgment also exists. In *Lindberg v. Lindberg,* 331 N.W.2d 479 (Minn.1983), a case procedurally similar to this matter but involving property distribution rather than custody, a default decree of dissolution was entered and a motion to vacate was made and denied. Upon appeal of that denial, the Minnesota Supreme Court reversed, stating: "We are satisfied that the interests of justice demand that these proceedings be vacated [as to all issues except the dissolution itself]." *Id.* at 479. Therefore, although appellant argues that fraud upon the court does, in fact, exist here, we need not address that issue. Instead we conclude that in light of the particular circumstances of this case the interests of justice demand that the custody portion of the dissolution judgment be vacated.

The default judgment here involved not property, as the *Lindberg* judgment did, but instead involved the grant of custody of a child without making any of the findings required under Minn.Stat. § 518.17 and *Pikula v. Pikula,* 374 N.W.2d 705 (Minn.1985). We believe the rationale of *Lindberg* is broad enough to extend to the facts of this matter, and that *Lindsey* cannot be read so narrowly as to preclude a court's inquiry into so vital an issue as custody.

We recognize that there are many fortunate instances in which parents determine the issue of custody of their minor children pursuant to stipulation. There are also instances where one parent acquiesces in the trial court's default determination of custody. In such cases, a parent relinquishes the statutory and case law protections afforded to him or her. By contrast, in the present case the facts clearly indicate that appellant never intended to relinquish these protections. She sought legal assistance to assert her custodial rights. Respondent's counsel received a request for an extension in which to answer the petition and therefore was aware that appellant did not intend to let the custody of R.M. be determined by default. Further, R.M. was in appellant's physical custody at the time of the default hearing. Both the referee and respondent's counsel should have been on notice that appellant did not intend to relinquish custody of R.M. through a default judgment.

Between the time of the default hearing and the entry of the judgment, respondent's counsel was made aware that appellant had changed attorneys. Yet he made no effort to notify appellant's new attorney of what had transpired. However, respondent's counsel commendably did notify the referee of the fact that appellant had retained new counsel. In light of these circumstances, both the best interests of the child and the interests of justice required that the referee inquire further before entering a judgment on such a crucial issue as child custody.

In *Cahaley v. Cahaley,* 216 Minn. 175, 12 N.W.2d 182 (1943) the supreme court considered facts similar to those present here and determined that a vacation of the default dissolution judgment was warranted because there had been a fraud upon the wife and the administration of justice. In *Cahaley* the wife had at all times intended to interpose a defense and her failure to do so was caused by a misunderstanding between the parties' attorneys. The court noted that the wife had promptly retained counsel and had a "right to assume that the answer would be served in time and her rights protected." *Id.* at 179, 12 N.W.2d at 184. Because of the special nature of divorce matters, the court cautioned that:

Where, as here, it appears that a party intends to answer in a divorce action, we feel that judgment in default should not be entered without ascertaining whether that party has changed his plans for con-

testing the case. * * * [C]are should be taken that a party is not deprived of his right to defend particularly when he has acted diligently and with dispatch to protect his rights.

*Id.* at 180, 12 N.W.2d at 185.

Finally the supreme court noted that: Defendant has been seriously prejudiced. Her substantive right of defense in a divorce action has been swept away, not through any fault of her own * * *. To suggest that the court has not the power under these circumstances to vacate the judgment and permit an answer is a denial of the court's inherent power to administer justice and of its guardianship over marriage and divorce.

*Id.* at 180–81, 12 N.W.2d at 185.

In the present case, too, appellant has been seriously prejudiced by the failure of the trial court and counsel to make appropriate inquiry in response to information which came to their attention. One of appellant's attorneys had prepared an answer. Appellant had every right to expect that the answer had been filed and served. As in *Cahaley,* the prejudice to appellant did not result from any fault on her part. An even more serious prejudice has been worked on R.M. whose physical and legal custody has been determined without any of the findings the law requires before making a decision of such profound impact.

The referee found that appellant and respondent were co-primary parents and that a custody study and trial would not alter its conclusion that it was in R.M.'s best interests for respondent to have custody. The referee's findings were based on review of affidavits from interested parties. These affidavits do not constitute sufficient evidence to support such findings. Under the facts of this case, a proper custody determination may be made only after both parties have been afforded the opportunity to present evidence and to have the credibility of that evidence determined in a proceeding where witnesses appear in person. Written affidavits can be subjected to neither the probing scope of cross-examination nor the scrutiny of the trier of fact's assessment of demeanor. The interests of justice, particularly where a child custody determination is at stake, require that parties be permitted to avail themselves of the protections established by the legislature in its statutory enactments and the judiciary in its case law pronouncements. Under the facts of this case, appellant has demonstrated the right to those protections both for herself and for R.M.

### DECISION

The trial court erred when it denied appellant's motion to vacate the custody portion of the dissolution judgment.

Reversed and remanded.