**In re the Marriage of Theresa Marie MANORE, petitioner, Respondent,**

**v.**

**Calvin Charles MANORE, Appellant.**

**No. C9–86–2178.**

Court of Appeals of Minnesota.

June 30, 1987.

William B. Simonet, Jr., Johnson & Simonet, Stillwater, for respondent.

Gary A. Flatten, Bloomington, for appellant.

Heard, considered and decided by LANSING, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

The trial court denied appellant Calvin Manore's motions for amended findings or a new trial or vacation of the default judgment dissolving appellant's marriage to respondent, Theresa Manore. Appellant claims that the trial court abused its discretion in its division of the parties' marital property and maintenance award and in refusing to vacate the default judgment. We reverse and remand.

## FACTS

Appellant and respondent had been married for approximately 26 years and had three adult children when the marriage was dissolved. At the time respondent petitioned for dissolution, appellant was living in North Carolina. He was personally served with the petition but did not answer, claiming that he thought no answer was

necessary in light of the language in the petition which provided:

> WHEREFORE [respondent] asks the Court to enter a Judgment as follows:
>
> 1. Dissolving the marriage of the parties.
>
> 2. Awarding an equitable division of the marital property and financial obligations of the parties.

Respondent and her attorney attended a default hearing held on May 22, 1986. At the hearing, respondent testified that she believed she should receive all the interest in the house because in the 26 years she had never worked outside the home and had raised the three children on her own. She said that appellant was currently sending her about $750 every two weeks to maintain the house and pay expenses of the parties' son. Respondent testified she understood the payments would continue until she found work, her son left for college, and she sold the house. Respondent testified that she had health problems that limited her activity.

The trial court adopted respondent's proposed findings and conclusions in their entirety and issued the decree of dissolution the same day as the default hearing. The findings stated in part:

> That the parties are owners of real property * * * held in joint tenancy exclusively by the parties, and that said premises are presently encumbered by a first mortgage.
>
> That the [respondent] is currently unemployed. The [appellant] is currently employed as a factory laborer at American Hoist, Wilmington, N.C., earning therefrom a net bi-weekly wage of approximately $750.00.
>
> That the parties have not entered into a Marital Termination Agreement or in any other manner attempted to settle matters concerning spousal maintenance, attorney's fees, property divisions and related matters, but rather [appellant] has chosen to put aside or ignore [respondent's] pleadings, rendering [appellant] in default of such pleadings hereto.

> That the [appellant] has been made aware by counsel for the [respondent] of the [appellant's] right to representation of his choice and based upon such information made available to him he has freely and voluntarily without reservation waived his right to such representation.

The judgment provided:

> 2. MAINTENANCE. [Respondent] shall continue to receive that amount of maintenance she is currently receiving from [appellant] until such time, if at all, that the parties' homestead property is sold.

> \* \* \* \* \* \*

> 4. REAL PROPERTY. The [appellant] shall quitclaim, convey and otherwise transfer to [respondent] all interests [appellant] currently has or prospectively could have in [the homestead] * * *.

Upon receiving notice of the judgment provisions, appellant retained an attorney. His attorney moved for amended findings, a new trial, or vacation of the default judgment. Appellant also ceased payment of maintenance to respondent at this time.

A hearing on appellant's motions was held on September 16, 1986, before the same trial judge that entered the original default judgment. The trial court found that the motions for a new trial or amended findings were untimely. It recognized, however, that there were some questionable aspects to the original judgment:

> Now, you know, we've got a busy calendar here and when somebody comes before the Court on a default hearing the Court pretty much goes along with the attorneys who are officers of the Court, or attorney, and assumes that maybe the parties have been talking together and that nobody is going to object to what is submitted to the Court for signature.
>
> On the other hand, there's a man who sits and does not answer anything. If this case is reopened, he ought to be paying every bit of your attorney's fees, I'll tell you that. It would seem basically

unfair to me. I don't think there is any fraud here, but just my basic sense of fairness says there should be a statute or a law somewhere that says you can't walk off with the store, the whole store, every bit of the property, and I don't know what case law says on this and I haven't studied the statute, but it seems basically unfair, and if there isn't any law on it, I'm sure an Appellate Court would find some law to justify anything that was basically fair or make new law because the Courts don't like anything that is basically unfair. We are supposed to be here to do what is fair and just and you can't walk off with everything.

Maybe as a practical matter there should be a full-blown hearing, because of her medical condition, and because he's not going to pay any maintenance and maybe he owes her maintenance.

Despite these concerns, the trial court refused to vacate the judgment and noted in its accompanying memorandum:

[Appellant] contends that the allegedly inequitable division of property and ordering of maintenance payments amounts to fraud on the Court and the administration of justice. Although the latter allegations may constitute overreaching on the part of [respondent], such awarding of property and maintenance payments does not constitute fraud.

Without such a showing of fraud, the trial court concluded that vacation of the judgment would not be appropriate.

### ISSUE

Did the trial court err when it refused to vacate the default judgment?

### ANALYSIS

The trial court relied on *Lindsey v. Lindsey*, 388 N.W.2d 713 (Minn.1986) in denying appellant's request to vacate the dissolution judgment. In *Lindsey*, the supreme court stated that trial courts lack jurisdic-

tion under Rule 60.02 to consider motions to modify dissolution decrees. *Id.* at 716 n. 1. However, the *Lindsey* court noted that a trial court still has "inherent power" to set aside a judgment that amounts to fraud on the court. *Id.* Our review of the circumstances and consequences in the present case leads us to conclude that vacation of the judgment is mandated.

Minn.Stat. § 518.58 provides in part:

Upon a dissolution of a marriage, * * * the court shall make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property. The court shall base its findings on all relevant factors including the length of the marriage, any prior station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party.

The findings of fact and conclusions of law in the present case do not evidence consideration of the statutory mandate set forth in section 518.58. While the court notes that the homestead is encumbered by a first mortgage, the court makes no finding in regard to the parties' homestead net equity.

The failure to comply with statutory requirements regarding disposition of the homestead is attributable to the erroneous assumptions and lack of inquiry on the part of appellant, respondent and the trial court. Appellant claims that he assumed the property division would be equitable according to the laws of the State of Minnesota and that this equitable division would occur whether or not he was present. He made no attempt to inquire what the actual consequences would be if he did not respond to the summons and petition. We appreciate the trial court's impatience with an individual who totally ignores the law's requirements and then seeks the law's protections. Indeed, if the issue of disposition of the

homestead equity was the only issue raised on appeal, we would affirm the trial court despite its failure to follow the statutory requirements.

■ However, an issue more troublesome than homestead equity is present. That issue, of course, is maintenance. At oral argument before this court, respondent's counsel conceded that the maintenance provision was perhaps not an appropriate one and that he assumed maintenance would be modified. Respondent's counsel conceded further that, in fact, respondent would not challenge a motion to modify maintenance. This assumption on the part of respondent's counsel, while candid, is questionable[1] because there have been no alleged changes in circumstances which could warrant modification under the provisions of Minn.Stat. § 518.64.

We note that respondent's proposed findings of fact and conclusions of law, adopted in full by the trial court, exhibit no indication of the in-depth inquiry required by Minn.Stat. § 518.552.[2] The only reference to maintenance in the judgment provides:

MAINTENANCE. [Respondent] shall continue to receive that amount of maintenance she is currently receiving from [appellant] until such time, if at all, that the parties' homestead property is sold.

No dollar amount is specified. This is an especially egregious omission in view of the fact that the trial court found appellant's net income to be $750.00 bi-weekly and that respondent indicated that she had been receiving from appellant approximately $750.00 every other week. At the very least the trial court had a duty to inquire whether appellant had additional sources of income which could provide a proper basis for an award of maintenance which represented 100% of the only income of appellant mentioned in the judgment.

An award of maintenance in an unspecified amount indicated a failure on the part of the trial court to follow the statutory requirements of section 518.552 not only as they pertained to appellant, but as they pertained to respondent also. While the initial vague award of maintenance may appear exceedingly generous to respondent, her failure to set forth evidence of her specific financial needs and resources could result in a judgment that appeared to grant her much, but in reality could provide

---

1. Ideally, respondent's attorney's assumptions and candor should have facilitated a resolution of these issues by agreement between the parties and their attorneys. It is axiomatic that parties and attorneys, through good faith negotiations, can creatively and equitably resolve the thorniest of issues more satisfactorily than can the courts. Unfortunately, such stipulated resolution was not achieved here.

2. Minn.Stat. § 518.552, subd. 2 provides:
   Subd. 2. The maintenance order shall be in amounts and for periods of time, either temporary or permanent, as the court deems just, without regard to marital misconduct, and after considering all relevant factors including:
   (a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
   (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;
   (c) the standard of living established during the marriage;
   (d) the duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;
   (e) the loss of earnings, seniority, retirement benefits, and other employment opportunities foregone by the spouse seeking spousal maintenance;
   (f) the age, and the physical and emotional condition of the spouse seeking maintenance;
   (g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and
   (h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business.

her with far less. Maintenance, by its terms, would cease upon respondent's sale of the homestead. With no indication in the judgment of the amount of homestead equity, the sale could result in wholly inadequate financial resources to meet respondent's reasonable needs. Alternatively, the need for continuing maintenance could result in respondent's inability to sell the homestead even though she might wish to do so for any number of reasons other than financial. The security and predictability afforded respondent by the terms of the maintenance provision are fragile, indeed.

Respondent's failure to make an adequate record regarding the maintenance provision was compounded by the trial court's blanket acceptance of that lack of record and of the trial court's unmodified adoption of respondent's proposed findings of fact and conclusions of law. The trial court stated that in cases of a default hearing, it assumes "that maybe the parties have been talking together and that nobody is going to object to what is submitted to the Court for signature."

The trial court's assumption was erroneous. It also contradicts its finding that "the parties have not entered into a Marital Termination Agreement or in any other manner attempted to settle matters."

When the trial court was presented with vague and inadequate proposed findings of fact and conclusions of law, it had a duty to make appropriate inquiries to insure compliance with statutory requirements and to modify the proposed findings and conclusions to reflect consideration of the statutory factors. The fact that a dissolution is secured through a default judgment does not permit the trial court to abdicate its responsibilities under the law. The result here is a judgment that serves neither the interests of the parties nor the interests of justice. We cannot extend the holding of *Lindsey* to encompass and sustain the result obtained by the trial court. This judgment must be vacated.

## DECISION

The trial court erred in denying appellant's motion to vacate the dissolution judgment. That portion of the judgment referring to maintenance and award of the homestead equity must be vacated and reconsidered on an expanded record.

Reversed and remanded.