In re the Marriage of Bette L.
BLATTNER, Petitioner,
Appellant,

v.

Karl William BLATTNER, Respondent.

No. C3–86–2208.

Court of Appeals of Minnesota.

Sept. 1, 1987.

Charles J. Lee, Goodhue County, Red Wing, for appellant.

Harvey N. Jones, Hastings, for respondent.

Heard, considered and decided by HUSPENI, P.J., and WOZNIAK and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Respondent moved for an order vacating provisions in a 1984 dissolution judgment. The trial court granted the motion based on the finding that respondent had been incapable of entering into the underlying stipulation. We affirm.

## FACTS

The parties had been married for sixteen years at the time their marriage was dissolved in March 1984. In 1983, it was determined that respondent had multiple sclerosis. Respondent was hospitalized for treatment of the disease in January 1984. He returned home but was forced to return to the hospital in early March and was transferred to a nursing home within a few days.

The summons and complaint for the dissolution were served on March 16, 1984, the same day that the stipulation was signed in respondent's room at the nursing home. Judgment of dissolution was entered three days later, on March 19, 1984.

The stipulation, *inter alia,* called for awarding appellant the couple's house and the family car, and provided that both parties waive their rights to spousal maintenance from the other.

Respondent testified at trial that the signature on the stipulation appears to be his, but that he does not remember signing the document. Respondent's family doctor, Dr. Sprangers, testified as to respondent's condition at the time surrounding these events. Respondent was taking the antidepressant mellaril, which Dr. Sprangers testified can "color a person's judgment and alter their memory." The disease itself could have caused respondent's mental functioning to deteriorate, and could have affected his judgment and state of mind. In Dr. Spranger's opinion, because of the disease and the medication, respondent would not have been able to understand the consequences of the dissolution stipulation on the day he signed the document.

Appellant testified that her attorney, Peder Hong, respondent, and she were present at the time the stipulation was signed in respondent's room. She testified that Hong read the entire agreement to respondent and asked respondent if he had any questions. Respondent asked if the car had to be in appellant's name.

The testimony of Hong was partially consistent with appellant's testimony. Hong testified that he asked appellant to explain to respondent why they were there. Appellant told respondent that they were there with the legal papers that set forth the agreement they had reached in connection with the divorce. Hong testified that appellant asked respondent if he wanted to proceed with this and he said yes.

Hong read the stipulation to respondent. Respondent expressed concern over certain property mentioned in the stipulation, such as the parties' station wagon, and expressed his feelings that parts of the stipulation were not fair. Appellant told respondent that the agreement was fair, and that they had talked about who would get certain property on previous occasions. Hong testified that "ultimately [respondent] seemed to accept that it was the agreement that they had made and we went on." On cross-examination, Hong testified that re-

spondent probably asked if appellant was getting the house. When asked if respondent was told that the house was going to appellant, and that respondent would no longer have any rights in the house, Hong replied "the most I can say with clear memory is that [the paragraph relating to the house] was read to him." Hong testified that he believed respondent understood the provisions of the stipulation.

Hong testified that it is unusual to proceed with such speed in a dissolution. He was unable to recall whether the dissolution decree was ever served upon respondent. Hong also testified as to his concern that respondent was not represented by counsel.

There was some evidence that respondent and appellant as well as respondent and Dr. Sprangers spoke on several occasions about the parties seeking a divorce to avoid depletion of their assets, because of respondent's need for long term health care and due to medical assistance rules on a recipient's available resources.

On March 7, 1986, respondent moved the trial court to set aside the judgment with respect to all property and support provisions. Respondent contended that due to his condition resulting from his affliction with multiple sclerosis, he lacked the mental capacity to make such an agreement, and that the stipulation was a product of duress and undue influence. The trial court granted respondent's motion, finding that the circumstances surrounding the stipulation amounted to a fraud upon the court. The trial court set aside the portion of the judgment relating to maintenance and property division, and the court ordered a new division of the parties' property.

### ISSUE

Did the trial court err in setting aside portions of the dissolution judgment, based on clearly erroneous factual findings or mistaken legal conclusions?

### ANALYSIS

■ The appellate courts will give increased deference to the trial court decision because appellant failed to make post-trial motions. *See Leininger v. Anderson*, 255 N.W.2d 22, 26–27 (Minn.1977). Therefore, the burden upon appeal is heavy on appellant to show that "based on the record [she] has provided, the trial court was clearly erroneous in its factual findings, or mistaken in its legal conclusions." *Id.* at 26.

■ Trial courts have inherent power to set aside or modify a divorce decree, where the court determines that "such a judgment amounts to a fraud upon the court."[1] *Lindsey v. Lindsey*, 388 N.W.2d 713, 716 (Minn.1986). *See also Bredemann v. Bredemann*, 253 Minn. 21, 24, 91 N.W.2d 84, 87 (1958). Depending on the particular facts of each case, incompetency is a factor of sufficient magnitude to amount to a fraud upon the court. *Lindsey*, 388 N.W.2d at 716.

The test for determining whether a person is mentally incapable or incompetent is "whether or not that person can fairly and reasonably understand the matter he is considering." *Krueger v. Zoch*, 285 Minn. 332, 334, 173 N.W.2d 18, 20 (1969).

■ Respondent contends that he did not have the capacity to enter into the stipulation, which was the basis of the dissolution decree. Respondent also argues that he was subject to duress and undue influence when the stipulation was signed.[2]

The trial court found that respondent was unable to fairly and reasonably understand the matters under consideration and

---

1. The trial court here acted exclusively under the doctrine of fraud. This case was not litigated on the theory of vacation of a stipulation treated as a contract. *See Tomscak v. Tomscak*, 352 N.W.2d 464, 466 (Minn.Ct.App.1984).

2. It is evident that there is considerable risk for a court and for the parties when one party enters into a stipulation without representation by counsel. This risk is heightened when the unrepresented party is disadvantaged. In such a case it is advisable that every step be taken to provide at least consultive counsel, or alternatively, that the court appoint a guardian ad litem under the authority of Minn.R.Civ.P. 17.-02.

lacked capacity to validly enter into a stipulated decree. In addition, the court found that respondent was on medication "of sufficient quantity to cloud respondent's memory and judgment." The trial court supported this finding in its memorandum, stating that respondent's incapacity was a result of "[respondent's] condition due to multiple sclerosis, depression, and medication."

 The evidence presented at trial adequately supported the trial court's finding on respondent's incapacity. Dr. Spranger testified that respondent's disease could have caused his mental state to deteriorate and could have affected his judgment and mental state. He also testified that the type and quantity of respondent's medication could "color a person's judgment and alter their memory." Because of the disease and the medication, in Dr. Spranger's opinion, respondent would not have been able to understand the consequences of the dissolution stipulation on the day he signed the stipulation.

A stipulation and judgment tainted by a party's incompetency may amount to a fraud upon the court. *Lindsey*, 388 N.W.2d at 716. We conclude here that the trial court did not err in vacating the dissolution decree.

Although duress and undue influence upon a party may also amount to a fraud, the evidence on duress and undue influence was conflicting and does not alone support the decision to vacate the decree. The trial court found that respondent was under duress and the object of undue influence from the collective suggestion of petitioner, his doctor, a social worker, and petitioner's attorney to agree to the dissolution and property settlement. On the other hand, there was some evidence that appellant and respondent agreed to a divorce for purposes of medicaid eligibility. Respondent, as well as appellant, may have had this motive for the divorce. Respondent gave up his house and considerable personal property under the stipulation, however, some of which was apparently unnecessary for medicaid eligibility.

The evidence on duress and undue influence was mixed, but taken together with the evidence of respondent's incompetency, was sufficient to meet the *Lindsey* standard for fraud.

### DECISION

The trial court did not err in finding that respondent lacked capacity to enter into the stipulation, and in vacating the dissolution decree which was based upon the stipulation.

Affirmed.