In Re the Marriage of Diana J. MERICKEL, Petitioner, Appellant,

v.

Theodore J. MERICKEL, Respondent.

No. C2–86–1857.

Court of Appeals of Minnesota.

Oct. 20, 1987.

Louis M. Reidenberg, Michael Ormond, Minneapolis, for petitioner, appellant.

L. Michael Hall, James A. Lavoie, St. Cloud, for respondent.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

This is an appeal from the trial court's denial of appellant Diana Merickel's motion to vacate a dissolution judgment and decree. We affirm.

## FACTS

In June 1983, pursuant to a stipulation, the marriage of appellant Diana Merickel and respondent Theodore (Ted) Merickel was dissolved by judgment and decree. The parties married in 1960, have no minor children, and have accumulated a sizable estate during their marriage.

The parties derived their income from the development and sale of residential and commercial real estate through corporations held in Ted's name. The parties' significant property holdings included commercial, residential, and apartment rental properties, as well as 60 to 70 undeveloped lots. Ted maintained primary responsibility for managing the parties' real estate interests, while Diana acted as homemaker. However, she also held substantial

management responsibility for an apartment complex named "Chateau Joy" and held a management interest in a small card and gift shop known as "The Poppyseed." For 18–19 years, Diana's insulin-dependent diabetes condition remained stable, but the stress of the marital difficulties resulted in insulin shock episodes which required hospitalization.

In March 1983, following marital problems, the parties began discussing property division. Ted's accountant aided in the property division, compiling a list of marital assets and assessing potential tax liabilities. He presented his analysis to the parties and proposed a distribution to minimize tax liabilities. The parties also met with an attorney, and it was agreed he would represent only Diana. Ted did not obtain an attorney. Diana's attorney subsequently met with Ted a number of times to list and assess the marital property. The attorney also met with the parties' accountant to review financial statements, tax schedules, and the proposed distribution.

Diana's attorney found the initial distribution proposal unsatisfactory and the parties eventually negotiated the stipulated property division. The stipulation drafted by the attorney awarded Ted the majority of the large real estate holdings and some personal property. Diana was awarded the parties' homestead, "The Poppyseed" business, certain property owned by Merickel Construction, Inc., a property settlement of $35,000, and additional personal property items. The division of certain personal property items and the denial of interest on the property settlement award were the subject of a prior appeal. *Merickel v. Merickel*, 401 N.W.2d 90 (Minn.Ct.App.1987).

In addition, Diana was awarded monthly payments of $6,000 for 20 years ($1,440,000). Although the stipulation characterized these payments as maintenance, they remained payable notwithstanding her remarriage or death. The trial court noted that the payments could be characterized as part maintenance and part property settlement, but declined to change the characterization of the monthly award as listed in the stipulation. The attorney reviewed the stipulation with Diana prior to its execution. In addition, she stipulated to the terms in court, testifying that she believed the stipulation was a fair division of marital property.

In June 1983, the parties entered a contract for deed wherein Diana purchased for $622,000 the "Chateau Joy" apartment complex originally awarded to Ted. The contract was to be repaid by monthly payments of approximately $5,000 for 18 years. This transaction apparently was contemplated by the parties prior to the dissolution, with Ted desiring the tax advantages and Diana desiring the rental income and insured receipt of maintenance payments.

Following the purchase of the apartment complex, Diana wrote Ted a letter discussing the distribution of property which was not included in the dissolution judgment and decree. These "side agreements," as termed by the trial court, were never revealed to Diana's attorney.

In December 1983, Diana initiated this action requesting a vacation of the judgment and a new trial based upon fraud, and later amended to include duress and mistake. The trial court held there was no subject matter jurisdiction to vacate or modify the judgment under Rule 60.02 pursuant to *Lindsey v. Lindsey*, 388 N.W.2d 713 (Minn.1986), which was decided shortly after the hearing. However, after a 17-day hearing, the court concluded there was no fraud on the court and the administration of justice. Further, the court found the marital estate was equitably divided and that Ted made no misrepresentations of material fact or nondisclosures which constituted fraud or prejudice to Diana. The court concluded that Diana was competent during the pendency of the dissolution and represented by competent counsel. Finally, the court denied both parties' motions for attorney fees.

## ISSUES

1. Did the trial court abuse its discretion in failing to vacate the dissolution judgment and decree or the stipulation?

2. Did the trial court err in failing to award attorney fees?

## ANALYSIS

1. Diana initiated her motion to vacate under Minn.R.Civ.P. 60.02. The rule permits relief from final judgment in certain circumstances, but specifically excludes "divorce decree[s]" from its purview. The trial court correctly noted that the supreme court has ruled that the exception regarding dissolution judgments is not solely confined to the part of the judgment severing the marriage, but affects the dissolution judgment in its entirety. *Lindsey v. Lindsey*, 388 N.W.2d 713, 716 (Minn.1986); *Bredemann v. Bredemann*, 253 Minn. 21, 24, 91 N.W.2d 84, 87 (1958). *Lindsey* held that a dissolution judgment may be vacated only by showing fraud on the court and the administration of justice. *Lindsey*, 388 N.W.2d at 716 n. 1; *see also Bredemann*, 253 Minn. at 24, 91 N.W.2d at 87.

Diana claims the trial court improperly applied the *Lindsey* standard in a retroactive fashion because the hearing was completed prior to the decision. However, *Lindsey* merely interpreted the clear language of Rule 60.02. Further, this court has applied *Lindsey* to a number of cases in which the trial occurred prior to the supreme court's decision. *See Adams v. Adams*, 393 N.W.2d 508 (Minn.Ct.App. 1986); *Saturnini v. Saturnini*, 390 N.W.2d 425 (Minn.Ct.App.1986).

The dissolution decree in this matter was based upon the stipulation between the parties. When a decree is based on an underlying stipulation, the issue of vacation is examined in light of the law on stipulations. *Yeager v. Yeager*, 405 N.W.2d 519, 522 (Minn.Ct.App.1987). The law on vacation of a stipulation permits opening of the judgment on a showing of fraud, duress, or mistake. *Tomscak v. Tomscak*, 352 N.W.2d 464, 466 (Minn.Ct.App.1984). Courts favor stipulations in dissolution cases as a means of simplifying and expediting litigation. *Id.* A trial court's decision not to vacate a stipulation will not be disturbed on appeal absent an abuse of discretion. *Id.* Further, this court will

accept a stipulation when the party was represented by competent counsel, there were extensive and detailed negotiations, and when the stipulation agreed to in court was acknowledged to be fair and equitable. *Kroeplin v. Haugen*, 390 N.W.2d 872, 875 (Minn.Ct.App.1986). Here, Diana was represented by competent counsel who negotiated and drafted the stipulation. She also stipulated to the terms in court, testifying that she believed the stipulation was equitable.

■ While the trial court focused upon the fraud on the court and administration of justice standard as stated in *Lindsey*, the court's comprehensive findings and legal conclusions show specific rulings on the claims of misrepresentation, nondisclosure, duress, and equitable division of the assets. These standards mirror the *Tomscak* requirements for vacation of a stipulation. Thus, the trial court applied the correct elements of the standard for vacation of a stipulated judgment and decree.

Diana founds her claim of fraud upon Ted's alleged failure to disclose and misrepresentation of the value of marital property. Additionally, she claims duress, unfair division of marital property, and mistake. The facts alleged to constitute fraud are examined on a case-by-case basis. *Adams*, 393 N.W.2d at 510.

*Nondisclosure*

■ Diana initially claims the trial court abused its discretion in ruling that there were no material nondisclosures prejudicing her. Following the dissolution, she wrote Ted a letter listing and discussing certain property items not included in the stipulation. She stated in the letter that some of the items, later claimed as nondisclosed, were divided pursuant to a "private" agreement between the parties. In the end, because of the vast amounts of marital property and poor recordkeeping, it was inevitable there would be some nondisclosure. Much of the property not listed in the stipulation was distributed through private agreements, as demonstrated by the letter. Overall, Diana generally either was aware of the property not included in the stipulation, or nondisclosure was immateri-

al and she was not prejudiced. The trial court was in the best position to evaluate the evidence and credibility of the witnesses. The trial court did not abuse its discretion in finding no material nondisclosure.

### Misrepresentation of Value

Second, Diana claims the trial court abused its discretion in finding no material misrepresentations as to value. The parties' real estate holdings comprised virtually all of the marital property. Except for the Coopers Hills Lots, legal descriptions and financial statements (used for obtaining financing) estimating the properties' value were all disclosed to Diana.

■ The trial court noted that real estate was subject to differing valuations. The court also held that Diana was not justified in claiming misrepresentation when her attorney was furnished a complete property inventory and its value was checked against county records. Moreover, she was advised of her right to obtain a separate valuation, but chose not to do so. The trial court did not abuse its discretion in finding no material misrepresentations of value.

■ Diana also claims the trial court erred in failing to assign definite values to the marital estate when evaluating her claim of fraud and determining whether the division was equitable. The court heard exhaustive testimony from accountants and the parties in regard to the value of the extensive marital estate. The court noted the subjective nature of the valuation and that the parties' calculations and values differed extensively. While the findings on the value of the marital estate could have been more specific, the court did not abuse its discretion in ruling the property division was equitable.

### Duress

■ Third, Diana contends the trial court erred in finding she was competent and under no duress when she signed the stipulation. She was represented by an attorney who drafted the stipulation, reviewed it with her, and advised against stipulating to the property as nonmarital. Nonetheless, she testified the stipulation was equitable. Two accountants and Diana's attorney testified that in their meetings with her they noticed nothing which led them to believe she did not understand what was happening. Although Diana's relatives testified that she was emotionally upset and in poor physical condition, she introduced no medical testimony in support of her claim. The trial court did not abuse its discretion in finding Diana was competent and not under duress.

### Mistake

■ Diana additionally claims the trial court erred in failing to characterize the nature of the stipulated maintenance payments and also erred in failing to find there was no meeting of the minds as to the characterization of the payments. Ted initially moved to modify the maintenance payments, but later withdrew the motion. Since the issue was not before the trial court and it thus declined to characterize the payments as either property or maintenance, the issue is not within the scope of this appeal. Although Diana cites *Landwehr v. Landwehr*, 380 N.W.2d 136 (Minn. Ct.App.1985) for support, that appeal was from the trial court's decision on a motion to reduce a maintenance award which the court found was ambiguous.

Further, the maintenance payments and stipulation were negotiated and drafted by Diana's attorney. There was no mistake regarding the terms of the payments. The award may be subject to characterization as either maintenance or a property division, but such a characterization is only necessary if one of the parties moves to modify the award as in *Landwehr*.

Diana claims the court erred by modifying the stipulation to include the private agreements and the purchase of the apartment complex by contract for deed. Although the court recognized these additional agreements and transactions in its fact findings, it did so merely in the context of a ruling on the claim of fraud, as opposed to incorporating them into the stipulation.

2. The award of attorney fees in dissolution actions rests almost entirely within the trial court's discretion. This discretion is so broad that a reviewing court rarely will reverse. *Rosenberg v. Rosenberg*, 379 N.W.2d 580, 587 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. Feb. 19, 1986). The trial court refused to award attorney fees to either party because it found the action was necessary to both parties and that any award would unjustifiably penalize the other. Given the broad discretion afforded the trial court in these matters, the findings and the evidence sustain the trial court's refusal to award attorney fees.

## DECISION

The trial court did not abuse its discretion in failing to vacate the dissolution judgment and decree or the stipulation. The trial court also did not err in refusing to award either party attorney fees.

Affirmed.